Good evening ladies and gentlemen and welcome. We are very pleased that you accepted our invitation to come and observe the court, hear oral arguments in a case this evening and we thank counsel for accommodating the court with a little later presentation than we ordinarily have. We're going to call case number 118728, People of the State of Illinois v. James Cherry. Are you ready to proceed? Are we ready? Thank you. May it please the court, counsel, and assistant attorney general Erin O'Connell on behalf of the people of the state of Illinois. I'd like to begin by addressing the subject of the People's PLA and then I will try to circle back and make a couple of points about the defendant's cross-appeal issue. On the first question, this court should reverse the appellate court's holding that aggravated battery predicated on great bodily harm is an improper predicate felony for armed violence because it both contradicts the plain language of the armed violence statute and it violates the clear intent of the General Assembly when it passed the relevant amendment. Generally speaking, the armed violence statute was enacted to provide a means of punishing more harshly the commission of a felony while armed with a dangerous weapon. Initially, the statute is phrased broadly to encompass any felony. However, it then goes on to exclude certain enumerated offenses as predicates and then as relevant here, it also has a generic exclusion of certain offenses that are not in the statute. This language ensures that if a separate and specific statutory provision is present that can be relied upon to account for the use of a dangerous weapon, then it cannot also at the same time be a predicate for armed violence and this avoids the problem that this court found in House Child under the identical elements test where it was finding that the use of a dangerous weapon was a predicate for armed violence. It was finding that there were charges being brought under armed violence that had identical elements to other charges that would have been brought under the more specific statute and that because the penalties did not line up exactly, those were a violation of the proportionate penalties clause. So here, the defendant has to show that the predicate offense falls within one of three general but discrete categories of offense. To be excluded, it has to either provide a mandatory sentencing factor that elevates the sentence due to the use of a dangerous weapon or it has to have as an element of the base offense the use of a dangerous weapon or it has to exist in an aggravated or enhanced form that provides a means, again, of accounting for the use of a dangerous weapon in a commission of the offense. Can I ask one question first? Does the statute define base offense or is that term used anywhere else in the criminal code to give some context as to what the legislature meant by those terms? The only place in the code that actually refers to offense is the definition section where it talks about, I think, an included offense. Do they use the word base offense? No. The word base offense, I think, could be unique to this statute. So the word base offense, which we're going to talk a lot about, only appears here? I believe so. But the context makes clear that the base offense is referring back to the felony that's being alleged as the predicate felony for the charge of armed violence. So the language also shows that the base offense has to be a single, defined set of elements because the statutory language requires looking at that set of elements and seeing if that set includes the use of a dangerous weapon. And the analysis doesn't work as well if the base offense is something like aggravated battery, just generically speaking, because there is no single, defined set of elements. So it doesn't make sense to say that there are certain elements of the base offense. So based on the context, I think it's clear that the base offense has to be here, aggravated battery causing great bodily harm, because that was the predicate for the charge of armed violence. And so given that, that is the base offense. The aggravated battery causing great bodily harm is not included under the category of those that have an element of the base offense. On page 12 of your brief, you say that battery is, I'm not sure you use the word base, but you say that aggravated battery is an alternative to battery. So why isn't battery the base offense? It could make sense to look at it that way, but given the context of the statute, again, the base offense is referring back to the predicate offense for armed violence. And in fact here, battery could not serve as the base offense sensibly because it's not even a felony under Illinois law. And I think what is important is that the court has to look at what is being charged as the elements of armed violence. Here the charge that's being imported into the armed violence statute is aggravated battery causing great bodily harm. And then the best way to read the other category based on the aggravated or enhanced version is as referring to not the specific offense that's being charged as a predicate, but to other provisions of the criminal code. So seeing if in some provision, either within the same statute or even another section of the code, there is a set of elements that includes your base offense and then adds as an additional enhancement the use of a dangerous weapon. So here there is no aggravated form at all of aggravated battery causing great bodily harm because there's no other place in the code where you can join those elements of commission of a battery causing great bodily harm and then also the use of a firearm in a way that takes into account the full scope of the defendant's conduct. This is my last question. You use the word enhanced. The statute uses two words, aggravated or enhanced. And our Kansas statutory interpretation indicated that the legislature chooses expressions in the disjunctive. The two words must mean two different things. Usually we use the word enhancement in terms of a sentencing factor. And we know the third prong that you're going to be discussing is about sentencing. So enhanced here must not mean sentencing. So what does this section of the code mean where it says aggravated or enhanced? I would agree with your honor. I think that that is another way of how we would typically refer to the sentencing enhancements. My only explanation is that the General Assembly seemed to be trying to be as inclusive as possible in ensuring that there were no further proportionate penalty violations as this statute found in House Child. So the legislature wanted to make absolutely clear that if there existed another way under the criminal code to charge the base offense plus the use of a firearm, whether it was through a sentencing provision or as an element of the offense, that that would be excluded from the armed violence statute so that there wouldn't be these And actually, the legislative history here is important too, I think, in understanding what is meant by offense. Because this court has actually recognized repeatedly that this particular statutory amendment was done for a very specific reason. And that was to respond to this court's holding in People v. House Child that there had been a proportionate penalty violation between the armed violence statute and the armed robbery statute. And given the context, the court should consider the way in which it employed the identical elements test. So as we've advocated, you have to look at the specific elements of the offense that's being charged as a predicate for armed violence. And that makes sense given that what the court is looking for in identical element challenge is whether the exact same conduct can be charged in two separate ways under two competing provisions. And here, the particular predicate of aggravated battery causing grave bodily harm, there is no way under the code that those elements can be joined to the use of a dangerous weapon to create a single crime unless the charge of armed violence is predicated on aggravated battery. And in fact, this court in COPA in 1998 discussed this use of the armed violence statute and it reasoned that where there is a statute that provides aggravated forms, in some cases where that aggravator is not the use of a firearm, use of the armed violence statute can be the only way to ensure that the aggravator that's being used for that offense is joined to the use of a firearm. And that the resulting sentence for the conviction can therefore take into account all of the different aspects, all of the different aggravating aspects of the defendant's particular conduct. So if this court were to adopt the defendant's reading of the amendment to the armed violence statute, it would cause the amendment to have a much broader and much more restrictive effect than I think the General Assembly intended. As we discussed, it was an intended response to House Child, and so the General Assembly sought to cure, and through very expansive language, maybe even redundant in certain respects, sought to cure that problem. But under the defendant's reading, the result of that amendment would be to exclude a much broader universe of potential predicate offenses from the armed violence statute. So here, there are 24 different forms of aggravated battery. Previously, under an identical elements analysis, only one or maybe two of those would be precluded as predicate offenses under a sort of identical elements analysis. But under the defendant's reading of this amendment, the General Assembly has essentially swept away the entire aggravated battery statute as a means of charging armed violence. And I think that that is just absent from the legislative history, and it ignores that there is also an intent by the General Assembly in enacting the armed violence statute to really reach broadly, to provide that the use of a firearm in the commission of, quote, any felony can provide the basis for the enhanced, more severe sentences that are set forth in the armed violence statute. Are you arguing plain meaning, or are you arguing ambiguity? I would rest first on the plain meaning. Given the way that this statute is phrased, I think the plain meaning is that the base offense, for example, has to have a single defined set of elements. I think I would have to concede that the word offense can be used in various different ways. So to some extent, it might be ambiguous. I mean, certainly in common usage, it might have other meanings. But to the extent that the court were to deem that ambiguous, certainly it should be guided by the context of the statute and the purposes of the legislation, which was only, in this case, to prevent proportionate penalty violations. Is it your position that each of the 23 types of aggravated battery in Section 5-12-4 are distinct offenses? They are distinct offenses, and for the purposes of armed violence, each of them could be a base offense. But the analysis has to be conducted with respect to each of these as to whether it's excluded as a base offense, whether it includes the use of a dangerous weapon. The analysis would have to go further for each of those to do, as we're doing here, which is to look through the code and see is there another provision where there's an aggravated form that builds on this form of aggravated battery and then adds on the use of a dangerous weapon. And if there is another section of the code that encompasses that, then that would be precluded under the second category because it would exist in an aggravated or enhanced version that accounted for the use of a dangerous weapon. Thank you. I'd like to address briefly, unless the court has further questions on the statutory issue, the basis of the defendant's cross-appeal. I'd just like to emphasize that the issue that's properly before the court on that question is a very narrow one. The issue that the defendant presented in the appellate court in his opening cross-appellant brief was simply whether the standard for judging post-trial counsel's effectiveness is strickland or chronic. And I think that the argument has shifted a little bit in his reply, and he's now started to suggest that perhaps the trial court itself committed an error. But this would be a forfeited issue at this point because this would be the first time that he's actually argued that it wasn't something that was on counsel that created the error, but something that the trial judge did in ruling on his motion. But even if the court were willing to look at that issue, as to whether the trial court did conduct an adequate crinkle hearing or whether those strictures were complied with, this is a fairly unusual case in that the court essentially bypassed crinkle altogether. So crinkle provides a means of determining whether separate post-trial counsel should be appointed by the trial court to argue a claim of trial counsel's ineffectiveness. But here, before that hearing had taken place, and it requires a certain threshold showing by defendant, before that had even happened, the judge had already decided to appoint separate counsel. And he did this for all post-trial purposes, including sentencing and also for arguing the post-trial motion. So crinkle at most would have entitled defendant to separate counsel, and it was necessarily satisfied here because defendant did have separate counsel to argue his motion. And the proper framework for analyzing his claim now is whether that post-trial counsel provided effective assistance. And as this court knows, the standard that this court uses in almost every circumstance is the Strickland standard, and that requires that he show not only that counsel committed certain errors, but also that the errors were prejudicial. The defendant argues that if this was a preliminary, but you're saying it's not a preliminary crinkle hearing, but if it were, then it was improper to allow the prosecutor to take part. So are you saying once the attorney was appointed, it became second stage or the next stage of crinkle? I think it took it outside of what crinkle was looking at. So, for example, the case that he cites, People v. Jolly, where the prosecutor participated. The court's concern in that case was that a pro se defendant arguing that his counsel was ineffective would effectively be facing two adversaries at this hearing, this preliminary hearing. He would be up against a prosecutor arguing against his claim and up against his own trial counsel, who is expected usually to be conflicted and not to join in a claim that, oh, I was incompetent at trial. So what all of those cases are looking for is whether the defendant should get new counsel. And that new counsel will not be conflicted and will have independent duties as counsel. And that requirement was met here. So I don't think it's fair to say that there was actually a preliminary crinkle hearing, but if there, essentially the court bypassed that and gave him more relief than crinkle would have entitled him to. Didn't the court really find that there was a breakdown between the defendant and counsel aside from the ineffective claim? Yes, I think both defendant and counsel at the hearing said that they had breakdown in communication. I think at that point the defendant had already filed his letter. So it might be fair to say that part of the problem that had arisen between them was that he was claiming ineffective assistance, but neither of them cited that at the hearing as the basis for counsel's motion to withdraw. And the court, for all purposes then, it wasn't just for a post-trial motion, but also for sentencing, appointed him new counsel going forward. And then just to conclude, because the issue before the court is whether petitioner has shown that counsel was ineffective under Strickland, his concession in his brief at page 20 that he cannot possibly show prejudice on this record should be conclusive of that issue and the court should affirm the appellate court's denial of a remand for a further post-trial proceeding. Thank you, counsel. May it please this honorable court, counsel, and esteemed guests, I'm Susan Wilhelm with the Office of the State Appellate Defender and I represent the defendant appellee, James Cherry. And James Cherry's conviction for armed violence is void because armed violence cannot be predicated upon aggravated battery. The real question here is what is an offense? Justice Tice, I think you were trying to get to the base of this. Can battery be the base offense? Yes, I think it can. Battery cannot normally be a predicate felony under armed violence because it's not a felony. But when they start using these phrases, any offense, any offense, they're no longer saying any felony offense. They're simply saying any offense. So yes, I do believe that if this court does not feel comfortable finding aggravated battery as our base offense here, then certainly simple battery would be one. Let's talk about that, Ms. Wilhelm. Your argument is that aggravated battery with a firearm is an aggravated or enhanced version of aggravated battery. Yes. Is that right? And the statutory language says that to prove aggravated battery causing great bodily harm, the state has to prove that the defendant intentionally or knowingly caused great bodily harm while committing a battery. Yes. Correct? So under the plain language of the statute, the causing of great bodily harm aggravates the crime of battery. Correct? Yes, it aggravates. Right. It aggravates the crime of battery. Yes. Here the predicate felony is aggravated battery. Which is also aggravated by firearm use. Okay. So now to prove aggravated battery with a firearm, the state has to prove that the defendant intentionally or knowingly injured someone by means of discharging a firearm while committing a battery. Yes. Correct? So under the plain language of that statute, the causing of injury by means of discharging a firearm likewise aggravates the crime of battery. Correct? Yes. I mean, that's what the statute says, right? So isn't it correct to say that aggravated battery with a firearm is an aggravated or enhanced form of battery, not an aggravated or enhanced form of aggravated battery? You could go down that far, I do believe. But in either case, we still have aggravated or enhanced forms here that cannot become predicate offenses for armed violence. Well, to prove an aggravated battery with a firearm, the state first has to prove that the defendant committed a battery. Yes. Right? And the state does not first have to prove that the defendant committed an aggravated battery. Correct? No. Well, the statute says, what we've all agreed on, you know, we all agreed, if the aggravated battery with a firearm statute does not require the state to first prove the commission of an aggravated battery, how then can it possibly be an enhanced or aggravated form of aggravated battery? Because aggravated battery is included in that. That's the causing of a harm that makes it aggravated. Aggravated battery is enhanced by that firearm used to aggravate a battery with a firearm. Yes, they both start with the base of battery, but then they go up to aggravated battery, and aggravated battery of a firearm goes up further by there. And we don't have a requirement here. I think what Justice Tice was getting to, when you talk about aggravated or enhanced, there's no requirement that these enhancements be, that these aggravations be exactly the same. There can be different ways to aggravate within a statute, just as there can be different ways to enhance. Let's go to the aggravated battery with a firearm statute. Isn't it more accurate to say that rather than being an aggravated or enhanced form of aggravated battery, aggravated battery with a firearm is simply the most aggravated or enhanced form of battery? You could see it that way. Even if it is the most aggravated or enhanced form of battery, though, there is a form of aggravated battery that has firearm use as part of its elements. Well, the predicate offense is aggravated battery. Yes. And it has an enhanced or aggravated version, aggravated battery with a deadly weapon, within another subsection. Not if aggravated battery with a firearm doesn't enhance battery. The aggravated battery with a firearm statute doesn't require the State to prove that the defendant injured someone with a firearm while committing an aggravated battery. That's not what the statute says. It says while committing a battery. While committing a battery. It requires the State to prove the defendant injured someone with a firearm while committing a battery, which means the discharge of a firearm aggravates battery, not aggravated battery. Correct. But aggravated battery has a form of it under B-1, battery with a deadly weapon, other than discharge of a firearm. And because it has a subsection within it, within that base offense of aggravated battery, that's enhanced by, not by firearm use, but by the possession or use of a dangerous weapon, then it cannot be a predicate offense for armed violence. All right. And I think that one of the things that we need to do here is to go back and look at some of the, when you talk about the definitions and how this started, in 2007 when we amended this statute, the language there, we were, the court in Sharpe in 2005 referred to the firearm enhanced offenses. It also referred to them as felonies. And in Guevara, again in 2005, we talked about the felony offense of home invasion that had categories based on firearm use. So at the time that this statute was amended, it would have been within the legislature's purview to realize that felony offense was a broad category, that within it, it could have separate subsections aggravated or enhanced by different behaviors. And when we ask what the legislature intended from this 2000 amendment, it intended to prevent robbery from being a predicate for armed violence, but also to stop the other proportionate penalties challenges. Where did they accomplish that in the statute? The easiest thing to do would have been to insert the word robbery there in the list of excluded felony offenses, right next to armed robbery. But they didn't do that. So which category covers robbery? It doesn't have possession or use of a dangerous weapon as an element of the base offense. It doesn't have a mandatory sentencing factor. That's armed robbery. So the legislature intended robbery to be that second category, where the possession or use of a dangerous weapon is an aggravated or enhanced version of that offense. Robbery is an offense that can be enhanced to armed robbery. Just as aggravated battery is an offense that makes the use of a dangerous weapon, an enhanced version of the offense, aggravated battery with a firearm, and it also has a subsection within it, B1, enhanced by the use of a dangerous weapon. When Justice Tice was asking before about aggravate and enhance and those two distinct words, I think the best example of this would be to look at the aggravated kidnapping statute. Aggravated kidnapping was one of the specifically precluded offenses in the 2000 version of the armed violence statute. Now it's not. It was taken out. It has to be under this catch-all. And aggravated kidnapping has seven different ways to commit it. There are four ways to aggravate. You can hurt a person over 13. You can conceal your identity. You can kidnap for ransom. And you can commit another felony. And there are three ways to enhance with firearm use. Under the state's version of the statute. And when you say enhanced, do you mean increase the sentence? Increase the sentence by 15, 20, 25 to life. So in that section, aggravation and enhancement has two separate meanings. Definitely it does for aggravated kidnapping. So should we be reading those ideas into this statute? That aggravation means an additional element. Enhancement means additional sentencing factor? I think my point is more that the state is arguing that you need some sort of, that you're only looking at subsections here. And I do not believe that the legislature intended this to go down subsection by subsection. Because if it did, then the 2007 amendment now allows certain forms of aggravated kidnapping, aggravated criminal sexual assault, or aggravated vehicular hijacking to again be predicate offenses for armed violence. Because they have subsections that are aggravated for conduct, not requiring a firearm. And what happens when these offenses are committed with a firearm and the prosecutor wants to charge both the aggravated factor and the firearm use? Can they predicate a non-firearm subsection on armed violence? Under the state's interpretation, yes. And once we start predicating on these subsections of armed violence, are we going to open the door again to another wave of these identical elements proportionate penalties challenges that this 2007 amendment effectively stopped dead in its tracks? That's what the legislature was trying to prevent. And I do not think that we want to interpret these as subsections and thus reopen that door for all of these myriad ways to charge armed violence under subsections. So all of the offenses, all of the subsections of 12-4 are one offense. Is that right? Yes, it is an offense. So there's one offense of aggravated battery. Yes, there's one offense of aggravated battery. And there are many different ways it can take place. Yes. Just like there's one offense of murder and many different ways that you can commit it, there's one offense of aggravated kidnapping, and there are seven ways that you can commit it. Yes. And regardless of how it's charged, it cannot be used as a predicate for armed violence. I believe that under the language that the legislature used here, yes, they intended that catch-all to cover that situation. And you think that's plain or is that because of an ambiguity? Well, Your Honors, the fact that we're here, I believe that it's plain. But the fact that I'm standing here with you and I'm getting a lot of questions, I believe that there is ambiguity in the statute. I don't think it was intentional. I think that the language has evolved over time. I think that the way we look at these has evolved over time. And so I would ask that if this Court believes that the 2000 Amendment is subject to different interpretations and therefore ambiguous, that you apply the rule of lenity and vacate James Cherry's armed violence conviction. There are no further questions. I just want to address one of the things. James Cherry's counsel failed to advance his claims at the Crankle evidentiary hearing. I do believe that he made it to a Crankle evidentiary hearing, where his claims were not subjected to meaningful adversarial testing. However, the State stated that the Court bypassed Crankle altogether. Before you get into that, asking another question might support your ambiguity argument again, but I have one more anyway. Why wouldn't you need the statute to read this way? You know, I went through the whole thing about how it aggravates the battery statute. But why wouldn't the statute have to read this way to support your argument? A person commits aggravated battery with a firearm when he, knowingly or intentionally by means of discharging of a firearm, causes an injury to any other person. Wouldn't that, wouldn't the statute be very clear if it was read that way? You know, it would be much clearer, and I think that we end up in the situation that this Court was in with Blair. That by, if you recall in Blair, by amending the armed violence statute, there's the question, did it then implicitly amend the armed robbery statute? That's the other way around. But the question is, when you're amending armed violence, it ends up having implications on the other statutes under it, and sometimes they're not all looked at again. They look at armed violence to amend it. They don't possibly look at all of the other subsections under there. And again, one of the things that the State said was the Court bypassed Crankle altogether. We know here that James Cherry filed a four-page letter where he listed multiple occasions of ineffective assistance of counsel. We have a post-trial pro se motion, and that triggers Crankle. Crankle is our common law protection, and the reason that this Court has always enforced Crankle is it gives us what we don't have here. It gives us a record immediately at the time of trial of what happened, what errors occurred. And that is something that we simply don't have here. And to the extent that this Court finds that Crankle was bypassed, then I would ask that we return to that original letter, and we return James Cherry to the trial court with a hearing on his Crankle motion. Mr. Cherry did have new counsel. He did. So when we're concerned about Crankle, the issue is the defendant at the end of trial raises it directly to the judge and says my lawyer didn't do what I asked him to do. He was ineffective. And then the trial judge has to decide whether or not this is a real problem, and if perhaps there's enough showing, then the remedy is the trial court appoints a new lawyer who can investigate those claims. Now, for other reasons, what happened here was at the end of the trial, the defense lawyer withdrew and a new counsel was appointed. So why hasn't the problem been solved by that? The problem wasn't solved by that because then this is set for a hearing on ineffective assistance of counsel, an evidentiary hearing. If this is first-stage inquiry, it doesn't meet first-stage inquiry for several reasons. First of all, my client was never questioned at all on the claims on his letter, either by the Court or by his counsel. I'm sorry. Are you suggesting that the second counsel was ineffective? Yes, I am. The Crankel counsel was ineffective for not advancing James Cherry's claims. That is my argument here. So the only he was appointed. He said this motion has merit. I'm going to proceed on this motion. We get to an evidentiary hearing where the trial court says to Crankel counsel, do you want to present evidence? And he says, no, I'm going to stand on the motion. By saying that the motion has merit, this is his motion. This is his burden to move forward. By not presenting any evidence, he's effectively doomed this to failure. The only new issue that he added after a year of this dragging through the court was to say that Cherry's trial counsel failed to investigate medical records that would have shown he was not drunk at the time. However, at his motion to reduce sentence, he argued that Cherry was drunk at the time. And all he did was make this bare allegation at this evidentiary hearing. He didn't bring in medical records or anything to support this allegation. He did nothing to present evidence at an evidentiary hearing where he had the burden of moving forward on this. And by doing that, he simply abandoned his burden. His representation was inaction, and he so completely denied James Cherry of a fair hearing that his prejudice should be presumed here. Cherry had the constitutional right to be effective assistance of counsel. But once counsel was appointed for him, Cherry doesn't have the right to speak anymore. He can no longer argue his motion. His counsel stands in his place. And here his counsel basically stood in front of him and did nothing. His counsel's inaction precluded any inquiry into his claims. It precluded any facts for this court to look at and weigh. It precluded any possibility of weighing facts for prejudice. And it's even waived consideration of these claims in post-conviction proceedings. When Cherry tries to raise these claims in a post-conviction, this previous denial is raised judicata. He will have to assert new facts or new evidence and basically abandon all of these claims in order to get through the first stage. And if he wants to go forward with these claims, he's going to have to substantially add to these claims with new evidence. He will face the higher burden than a gist of a constitutional claim because of this raised judicata that's been left in place by his counsel's inaction. So again, I would argue that James Cherry's post-trial Krenkel counsel was ineffective at the Krenkel evidentiary hearing when he did nothing to develop Cherry's complaints, made no attempt to show prejudice as required under Strickland. Because this hearing was so inadequate, this proceeding can be presumed unreliable. And – Counsel, I know you say he didn't do anything to develop that argument, but did he argue it at all? He basically just said, no, I stand on his claims. He argued for maybe a page or so. But he did nothing to add evidence. James Cherry was there. A lot of these claims have to do with James Cherry. Well, what I'm trying to get at is this. If you're hanging your head on Krenkel, it has to be a complete failure. I mean, an absolute do-nothing. He did something, right? He did something. I know you don't think he did much, but he did something. He did something, and by doing that, he erected a giant wall of raised judicata to block my client from moving forward. And if, as the State claims, James Cherry's claims were denied at a preliminary Krenkel hearing, the State was adversarial at that hearing. It did speak out. It did argue against James Cherry's claims. And because of that, that hearing held on January 16, 2013, was an adversarial hearing. It violates this Court's rule in People v. Jolly, and I would ask that the Court remand this for a new preliminary Krenkel inquiry before a new judge. Thank you. Thank you. Ms. O'Connell? Yes. You heard the questions regarding whether aggravated battery with a firearm is an aggravated or enhanced form of battery rather than an aggravated or enhanced form of aggravated battery, right? Yes. And you didn't make a big issue of that, did you? I think that the reasoning – so it's erroneous reasoning because, as we've pointed out – That question was erroneous? No, the reasoning that would conclude that aggravated battery with a firearm is an aggravated or enhanced version of aggravated battery is flawed because it doesn't encompass all of the same elements. Whereas the aggravated battery charge would have a great bodily harm, the aggravated battery with a firearm would only have just any injury. So I think what the appellate court was looking at is the fact that it is true that aggravated battery with a firearm is a more severe crime in terms of its characterization. So that would be a Class X felony, as opposed to just pure aggravated battery without the armed violence around it. That would be a Class III felony. But what's important here is that the appropriate sentence as determined by the legislature is what happens when both of those aggravators are present. And that sentence is provided by the armed violence statute. So the legislature has decided that where you have great bodily harm and you have the use of a dangerous weapon, then you've committed armed violence and you are in the sentencing for a Class X felony with a 20-year minimum. So that is the way that the legislature has accounted for all of the different conduct where you have the dual aggravators here and not just one or the other. Just very briefly on the aggravated kidnapping question, I believe that's a statute that provides for the mandatory sentence enhancements. And as there are three categories of excluded offenses, we've been focusing on those that have an element of the base offense or an aggravated kidnapping. There is a third category. So in these statutes that provide the mandatory sentence enhancements, those are excluded as well. And so aggravated kidnapping does provide for those enhancements. And therefore, that would fall within the third category of excluded offenses. But our point is just that you have to look carefully at the elements of the crime being charged and either fit it within one of these three categories. And if it doesn't precisely fit within one of the three excluded categories, then it's still an appropriate basis for a charge of armed violence. To the extent that the language is ambiguous, I don't think that the General Assembly's intent here is ambiguous at all. And the rule of lenity only comes into play where there is some uncertainty as to what the legislature's intent was. So therefore, because we have here the clear legislative history as to what this was intending to do in terms of avoiding identical elements problems, the rule of lenity doesn't come into play because that dictates what is the appropriate reading of the armed violence statute. And then just briefly on the remaining issue, defendant's post-trial counsel was required to provide effective assistance. We're not disputing that. But that requires him to show two things to prevail on an argument that counsel was ineffective. He has to show both deficient performance and he has to show prejudice. And it's important here that even on deficient performance, counsel is presumed to be competent and he's presumed to have undertaken an investigation and decided, as counsel is prone to do in making strategic decisions, that it was better to not present the defendant as a witness at the hearing. And it's presumed that he did that for good reasons. So the defendant here has failed to show even deficient performance. But again, because we're in the realm of Strickland, as the court noted, this wasn't a complete failure. At a minimum, what counsel did at the hearing was he emphasized those portions of the motion that he thought were the most meritorious, which is a value that, for example, appellate counsel often does in highlighting certain arguments as those that should be pressed. He added that value to the post-trial hearing. And then because we have to look under Strickland, the defendant still has the burden of showing prejudice. And this claim of his that he's now precluded from raising this issue again, I think even he conceded that he's really not precluded if he comes up with new evidence. If it turns out that there are witnesses that would have exonerated him that counsel failed to find, defendant has the burden of finding those witnesses and introducing that evidence. He just hasn't done so yet. And there's a possibility that at a post-conviction proceeding, if those witnesses exist, then he will have the opportunity at that point to proceed on his claim. Thank you. Thank you. Case number 118728, People of the State of Illinois v. James Cherry, will be taken under advisement as agenda number six. Ms. O'Connell and Ms. Gorman, thank you for your arguments this evening. Ladies and gentlemen, we will adjourn at this time. There was a reception immediately outside the courtroom. We'd like to join you in a few moments. Obviously, we can't discuss the case that we have before us tonight, but we certainly do hope to have some time to enjoy your company. Mr. Marshall, the Supreme Court stands adjourned until 1030 a.m. on Thursday, May 19th, in Lyle, Illinois.